**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

DEBRA and HERM CLAUSSEN, et al. )
Plaintiffs, )
)
v. )
) Case No. 21-00124-CV-W-FJG
CENTERS FOR MEDICARE )
& MEDICAID SERVICES, et al. )
)
)
Defendants. )

## PLAINTIFFS' MOTION FOR LEAVE TO SERVE FOCUSED DISCOVERY AND SUGGESTIONS IN SUPPORT

Come now plaintiffs Herm and Debra Claussen *et al.,* by and through the undersigned counsel, and for their Motion for Leave to Serve Focused Discovery, state as follows:

1. This is an action under the Freedom of Information Act, 5 U.S.C. §552, in which Plaintiffs seek federal records relating to the death of their son, Travis Claussen, 40, following his treatment at a hospital that received federal funds and was therefore subject to a series of detailed federal surveys, conducted through a CMS-contractor state agency.

2. At issue in this suit are two separate FOIA requests made by Plaintiffs, which are attached to Plaintiffs' Petition in this matter as Exhibits 1 (Doc. 1-2) and 3 (Doc. 1-4).

3. The first referenced Request was limited to matters regarding Mr. Travis Claussen, and sought: (1) the complete contents of any investigative file(s) discussing Mr. Claussen's death; (2) all medical records referencing Mr. Claussen; (3) a complete copy of any Statement of Deficiencies referencing Mr. Claussen, along with any supporting documentation such as surveyor notes and witness statements; (4) a complete copy of any Plan of Correction referencing Mr. Claussen, including supporting documentation; (5) any correspondence

1

referencing Mr. Claussen; (6) Any documents gathered by CMS but not yet produced pursuant to FOIA requests previously made by Plaintiffs; and (7) any documents provided to CMS by the Kansas Department of Health & Environment (its state-agency contractor) regarding Mr. Claussen. (*See* Doc. 1-2).

4.      The second Request extended more broadly to "Records/Reports Concerning Blue Valley Hospital" and was not limited to seeking records regarding Mr. Claussen. It sought: (1) the complete contents of any investigative file(s) discussing Blue Valley Hospital from 2015 to present; (2) a complete copy of any Statement of Deficiencies referencing Blue Valley Hospital, along with any supporting documentation including but not limited to surveyor notes, investigator's notes and witness statements, from 2015 to present; (3) a complete copy of any Plan of Correction, along with any supporting documents, within the same time frame); (4) any correspondence referencing Blue Valley Hospital; (5) the complete investigative file concerning the death of any other patients at Blue Valley Hospital from 2015 to present; (5) any documents gathered by CMS but not yet produced pursuant to Plaintiffs' previous requests; and (7) any documents provided to CMS by the Kansas Department of Health and Environment referencing Blue Valley hospital. (*See* Doc. 1-4).

5.      On July 16, 2021, CMS provided 112 pages of various documents, consisting largely of redacted survey summaries, and a response letter (Doc. 1-5) that referred only to a single "request," and not the multiple requests submitted by Plaintiffs. The response mistakenly stated, "Within your correspondence, you requested access to and copies of all of CMS' records that references your clients, Debra L. Claussen and Herm Claussen's deceased *father*, [sic] Travis Claussen" (emphasis added). The letter referred to an "attached" request; however only

the first above-described request (for records regarding Mr. Claussen) was "attached" to the response, and there was no reference to the second, more broad request.  Doc. 1-4.

6.      Plaintiffs timely appealed as to the adequacy of the agency's responses and the applicability of the claimed exemptions (b)(6) and (b)(7)(C) as to redacted material, and, following the lack of any response to the appeal by CMS, filed this suit Feb. 26, 2021.

7.      On July 15, 2021, Defendant filed its *Vaughn* index (Doc. 12-1) along with an attached "Declaration of Hugh Gilmore," (Doc. 12-2) (the "Gilmore Declaration"), which was unsigned.

8.      The Gilmore Declaration provided a recap of Plaintiffs' FOIA requests, and provided a general description of the process undertaken by Defendant CMS to respond to the requests, which, according to the description, involved asking its contractor the Kansas Department of Health and Environment for "federal records in its possession which were responsive to the FOIA request," resulting in identification of 112 pages of records. (These records had been previously produced to Plaintiff before this lawsuit was filed, pursuant to their prior FOIA requests.)

9.      CMS claims in the unsigned Gilmore Declaration that upon Plaintiffs' filing of this lawsuit, it "conducted a second search to determine if additional records existed regarding the request," which CMS asserts consisted of a "diligent search through the state surveyors" resulting in the "same one hundred twelve pages" previously produced to Plaintiffs, but no additional records.  Doc. 12-2 at ¶ 17.

10.      The unsigned Gilmore Declaration did nothing to describe CMS' search methods with particularity, providing no specifics about the nature and scope of the search, such as the parameters of the searches, whether electronic and/or physical documents were searched; the

custodians whose documents (electronic and/or physical) were searched; and the shared files (electronic or hard copy) and shared computer drives that were searched. Id.

11. Similarly, the Gilmore Declaration does not describe whether email or electronic searches were conducted, and if so, what search terms were used or the date range of the search. Id.

12. In short, the Declaration does not describe "what records were searched, by whom, and through what process," in a manner showing that the "search was reasonably calculated to uncover all relevant documents," and the declaration fails to explain the scope and method of Defendants' search in a non-conclusory fashion. *See Sheppard v. United States Department of Justice,* No. 17-01037-CV-W-ODS, 2019 WL 3577699 (W.D. Mo. Aug. 6, 2019).

13. Although CMS asserted in the unsigned Gilmore Declaration that it had located all responsive records after a diligent search, CMS' response to Plaintiffs failed to include at least four significant pieces of licensing correspondence regarding Blue Valley Hospital, which can be located on the U.S. Courts' PACER system in a different litigation matter involving Blue Valley Hospital, but somehow were not among the records that CMS identified in response to Plaintiffs' requests. Copies of these documents (available through the District of Kansas PACER site) are attached hereto as Exhibit "A" for sake of convenience.

14. These materials include:

a. A Feb. 2, 2018 letter from CMS's "Midwest Division of Survey & Certification" to Blue Valley Hospital's administrator, in which CMS informs the hospital it is taking action to terminate the hospital's status as a Medicare provider. (D. Kan. Case No. 2:18-CV-02176-JAR-GLR, Doc. 1-1). (Ex. A-1 hereto, at pp. 1-3).[1]

---

[1] To be clear, this letter includes, as an attachment, a 7-page "Statement of Deficiencies" which was produced to Plaintiffs in redacted form pursuant to their FOIA requests. The Feb. 2, 2018 letter, however, was not.

4

b. A Feb. 12, 2018 letter from Blue Valley Hospital to the Department of Health & Human Services discussing various other documentation and proceedings (Id. at Doc. 1-2). (Ex. A-2 hereto).

c. A March 27, 2018 letter from CMS to Blue Valley Hospital's CEO regarding additional termination proceedings; (Id. at Doc. 1-3). (Ex. A-3 hereto).

d. An April 12, 2018 letter by Blue Valley Hospital's counsel making reference to proceedings to terminate the Hospital's status as a Medicare provider and associated documentation (Id. at doc. 1-4). (Ex. A-4 hereto).

15. In addition to failing to account for these obviously responsive documents, the responses by CMS to date fail to account for (a) a supposed large volume of records that CMS' Anna Lee previously cited, in 2019 as the reason for a prior delay in responding to Plaintiffs' prior FOIA requests; *see* Exhibit "B," Declaration of Kris Pare,' describing her discussions with Ms. Lee, and (b) the fact that the survey documents produced are on their face a compilation drawn from other, primary sources such as survey notes and interviews, which have not been accounted for. *See, e.g.,* Doc. 1-2, sample "Statement of Deficiencies" appended to Plaintiffs' FOIA request, at pp. 13-14 (describing interviews and other records).

16. As alluded to in the parties' prior submissions, in recent months Plaintiff's counsel has made repeated attempts to arrange for informal, agreed-upon discovery with CMS counsel, to evaluate whether informal resolution of this matter is possible, or to otherwise narrow issues for summary judgment. *See, e.g.,* Plaintiffs' First Unopposed Motion to Amend Briefing Schedule (Doc. 17) at ¶ 2.

17. At the suggestion of Defendants' counsel, Plaintiff's counsel, on or about October 21, 2021, provided a list of topics for a proposed 30(b)(6) deposition, on topics including

5

identification of all documents prepared as part of the CMS surveys, and in particular any "interview statements" generated during the surveys.

18. The parties engaged in numerous follow-up discussions, all under the guise of trying to reach agreement that would allow some focused discovery by mutual agreement.

19. To date, however, Plaintiffs have been unsuccessful in securing Defendants' agreement as to the scope and method of the proposed agreed discovery, and thus now seek an Order from the Court allowing what Plaintiffs had hoped to accomplish informally without Court intervention.

20. Plaintiffs are cognizant of the Court's summary-judgment briefing schedule and the maxim that, ordinarily, discovery is not ordered in a FOIA matter (if at all) until after the parties have moved for summary judgment. *E.g., Tamayo v. U.S. Dept. of Justice,* 544 F. Supp. 2d 1341, 1344 (S.D. Fla. 2008). In this instance, however, the Jan. 7, 2022 deadline for Plaintiffs to file their motion for summary judgment has now passed with no filing.

21. Further, the Court's original Briefing Schedule of June 14, 2021 (Doc. 11) (subsequently modified upon motion of the parties), provided that, if a party believed discovery to be necessary during the course of briefing-- or after filing of the *Vaughn* index and search affidavit -- the party "shall file a motion seeking leave of Court to conduct discovery, setting forth the legal basis for the discovery and the specific discovery sought."

22. Plaintiffs have not, up to now, filed a Motion to this effect because they were attempting to reach an agreement with Defendants as to potential agreed discovery, with the potential of avoiding motion practice or consumption of the Court's resources.

6

23. Defendants suggest that focused discovery, as set out herein (if allowed), may be the most efficient route to obtaining the information Plaintiffs seek, given the time that has already elapsed since Plaintiffs made their requests nearly two years ago.

24. Further, discovery is an appropriate tool in FOIA matters, within the Court's sound discretion, where the agency has not met its burden of establishing the adequacy of its search—which, unquestionably, here, it has not. *See Families for Freedom v. U.S. Customs & Border Protect.*, 837 F. Supp. 2d 331, 336-37 (S.D.N.Y. 2011) ("a court should not… cut off discovery before a proper record has been developed; for example, where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory[.]") (citation omitted).

25. In addition, although discovery is not standard in every FOIA case, it is appropriate in cases in which the plaintiff offers declarations, affidavits, or other evidence or argument showing a material issue that contradicts the adequacy of the search. *See Heily v. U.S. Dep't of Commerce*, 69 Fed.Appx. 171, 173 (4th Cir. 2003); *Goldner v. Social Security Administration*, 293 F.Supp.3d 540, 544-45 (D. Md. 2017).

26. Plaintiffs have particularized reasons in this instance to question the adequacy of CMS' search, which appears on its face to be inadequate, and have therefore shown material issues contradicting the adequacy of the search. In particular, the agency asserts, with support of an unsigned Declaration, that the only records it possesses about the matters encompassed within Plaintiffs' requests are documents it previously located and produced. Yet other, obvious documents—including those described in paragraph 14 *supra*  --have not been accounted for within the agency's productions or explanations.

27.     Further, CMS' responses to date have failed to account for the "large volume" of state records cited as the reason for a prior delay by CMS in producing the requested information, Ex. B, or for the fact that the records produced are, on their face, compilations of primary-source materials.

28.     There appears to be a "disconnect" between Defendants and their contractor, the Kansas Department of Health and Environment.

29.     Plaintiffs therefore propose the focused discovery, the substance of which is attached hereto as Exhibits "C," "D" and "E." That is:

a.  Plaintiffs propose noticing a 30(b)(6) deposition for both CMS and its contractor KDHE, on the focused topics as set out in Exhibits "C" and "D" to this Motion, respectively, relating to the universe of potentially responsive documents and the efforts undertaken to locate documents.  Although the proposed notices to CMS and KDHE vary, they generally encompass:

   i.  Identification of each document prepared or created as part of surveys of Blue Valley Hospital in 2017 and 2018;

   ii.  Identification of each "interview statement" created as a result of the surveys;

   iii.  Identification of each document encompassed within the large volume of documents referenced in Anna Lee's prior communications with Plaintiffs;

   iv.  A description of what efforts have been undertaken to locate the original notes, interview statements, and survey materials, and the current location and custodian of such documents; and

8

v.  A detailed description of the systems used to retain each category of the requested information, and the process undertaken to search for responsive documents.

b.  Only in the alternative, should the Court deny Plaintiffs' request for leave to conduct a 30(b)(6) deposition of CMS's representative, Plaintiffs seek leave to propound interrogatories to CMS as set forth in Exhibit "E," to be answered within 21 days, on substantially the same topics as those set forth in the proposed Notice.

30.  The substance of the proposed Discovery all relates to the central issues in a FOIA action, in that it seeks to identify the documents prepared or created as part of CMS's surveys of Blue Valley Hospital, the efforts undertaken to search for and identify the referenced documents, and the current location and custodian of such documents.

WHEREFORE, Plaintiffs pray that the Court grant this Motion for Leave to Serve Focused Discovery, allow Plaintiffs leave to serve the specified discovery, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**STEVENS & BRAND LLP**

*/s/ J. Eric Weslander*
J. ERIC WESLANDER, MO #63617
Stevens & Brand, LLP
900 Massachusetts Street, Suite 500
Lawrence, Kansas 66044
(785) 843-0811; (785) 843-0341 – facsimile
eweslander@stevensbrand.com
Attorneys for Plaintiffs

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of January, 2022, a true and correct copy of the foregoing Motion for Leave to Serve Focused Discovery was electronically filed with the Clerk of the Court via the CM/ECF e-filing system, which will send notice of filing to all participants receiving notices.

*/s/ J. Eric Weslander*
J. Eric Weslander

Case 4:21-cv-00124-FJG    Document 21    Filed 01/19/22    Page 10 of 10